## SUPREME COURT.

WILLIAM H. KENZEL, respondent agt. EDWIN R. KIRK and others, appellants.

Where an owner charters his vessel to the master for a certain period, he covenanting to victual and man her at his own cost, the latter is owner *pro hac vice*, and, like any other charterer, is alone responsible for supplies furnished for the intended voyage.

But under the letting a vessel on shares, even where the master engaged with the owners to provide supplies at his own cost, the owners would be liable for the supplies, unless the person from whom they are purchased is aware of the *terms of the arrangement, or might, by the exercise of reasonable care and caution, have ascertained them.*

The master is not restricted in his purchases to the port where the vessel lies. He has a discretion to purchase in a neighboring port if it is more convenient for him to do so, and if he can deal there more advantageously for the owners. Of this he is the judge.

*New York General Term,* 1861.

CLERKE, INGRAHAM and SUTHERLAND, *Justices.*

THE above respondent was a store-keeper in Jersey City, dealing with vessels. The master of the schooner Moonlight came into his store and bought an outfit in provisions for the schooner, for a round voyage he was about making to the West Indies and other ports. The amount of the bill was $296.88. The bill was purchased in the name of the vessel, on a credit of three months. Nothing was said at the time of the purchase by the master that he was running the vessel on shares; nor did the plaintiff have any knowledge of the fact, but supposed he was dealing with the master of a vessel in need of supplies.

At the time of the purchase the master told him she needed such stores, and what voyage she was going on.

The vessel lay at Elizabethport at the time of the purchase, and the goods were received on the schooner, and enabled her to make her voyage.

It appeared further, in proof, that the schooner had originally been built for the captain to command her, under

an understanding that he was to do her business. Though he had run the vessel on shares, he had been in the habit of buying supplies, and also in having repairs made on her, for which the owners paid, and of doing with the vessel as other captains did. The owners never objected to his ordering repairs to be done.

It also appeared in evidence, that after this bill was contracted, all the owners, except one, who owned one-eighth of the vessel, were willing to pay the bill.

Upon that and other proof the plaintiff went to the jury, who found in his favor.

After judgment the defendants appealed to the general term.

C. DONOHUE, *for appellant.*

D. McMAHON, *for respondent.*

By the court, CLERKE, P. Justice. It will not be disputed, I presume, if the owner charters his vessel to the master for a certain period, he, covenanting to victual and man her at his own cost, is to be deemed the owner *pro hac vice* (*Hallett* agt. *Col. Ins. Co.*, 8 *J. R.*, 252;) and he, like any other charterer under similar circumstances, is alone responsible for supplies furnished for the intended voyage. But, it is contended on behalf of the plaintiff, where the transaction is not a positive chartering but a letting of the vessel on shares, although the master engaged with the owners to provide the supplies at his own cost, that the owners are still liable, unless the person from whom they purchased, is aware of the arrangement.

The distinction taken by the elementary writers seems to be very frequently, though not invariably recognized. It is laid down by them, that, in the absence of any notice to the plaintiff that the vessel was let on shares or of an opportunity by reasonable care and caution to ascertain the fact, the case would appear to be the ordinary one of the master of a vessel buying necessary supplies for the voyage.

The charge of the judge was in conformity with this rule, which, I think, is tenable on principle and the weight of authority.    Indeed the evidence would have authorized him to charge still more favorably for the plaintiff.    The master, in his deposition, testifies that he ran the vessel on shares ; that he was to receive one-half the earnings, and to pay one-half the disbursements.    This seemed to have made it a joint concern ; the owners, even as between them and the master, were to be liable for one-half of the disbursements incurred, it is to be presumed, either for repairing or manning, or for furnishing supplies.    To be sure, he says in answer to the question, " Who was to provision the vessel?" that he was ; yet, as provisioning was certainly a part of the disbursements, and as he expressly says one-half the disbursements were to be defrayed by the owners, I cannot believe that he meant to say that he was to provision the vessel exclusively out of his share at his own expense ; but that it was to be done through his agency and personal attention.    It also appears from his testimony, that the owners dismissed the master at Key West, and that they took possession of the vessel, and of the stores purchased by the plaintiff, which remained unconsumed.    When, in addition to this, we consider that the credit was expressly given to the vessel, that there was nothing in the transaction to induce the plaintiff to suppose that there was any special arrangement between the owners and master, that he had ordered repairs which were paid for without objection by the owners, and that seven-eighths of them in value had ratified the master's authority by expressing their willingness to pay this demand, I think, if the judge erred at all, it was in not telling the jury that there was no testimony in the case to exempt the owners from their general liability.

With regard to the objection that the stores were purchased in Jersey City instead of Newark, I am not aware that the master is restricted in his purchase to the port

where the vessel lies. He has a discretion to purchase in a neighboring port if it is more convenient for him to do so, and if he can deal there more advantageously for the owners. Of this he is the judge.

The other objections are equally untenable.

Judgment should be affirmed, with costs.